UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN L. LaCROIX,                          Case No. 22-12936
                          Plaintiff,
v.                                         F. Kay Behm
                                           United States District Judge
PATICK NACHTREIB,
                          Defendant.       Curtis Ivy, Jr.
_____/                 United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (ECF No. 57) AND MOTION TO DISMISS (ECF
<u>No. 55)</u>**

I.      **PROCEDURAL HISTORY**

Plaintiff Kevin L. LaCroix filed this *pro se* prisoner civil rights action on

December 5, 2022.  (ECF No. 1).  The Court granted his application to proceed *in

forma pauperis* ("IFP") that same month.  (ECF No. 4).  In February 2023, the

District Judge referred all pretrial matters to the undersigned.  (ECF No. 10).  On

April 13, 2023, Plaintiff moved to amend his complaint.  (ECF No. 15).  The Court

granted Plaintiff's motion, (ECF No. 19), the undersigned screened the Amended

Complaint, (ECF No. 20), and the District Judge adopted the resulting Report and

Recommendation, (ECF No. 28).

Afterward, on January 9, 2024, the Court issued the Scheduling Order that

set the initial dispositive motion deadline for August 9, 2024.  (ECF No. 33).  In

June 2024, Patrick Nachtreib—the remaining Defendant—moved to extend discovery and dispositive motion deadlines.  (ECF No. 47).  The Court granted Defendant's motion and set the new deadline for dispositive motions as October 9, 2024.  (ECF No. 53).  On October 8, 2024, Defendant timely filed the motion for summary judgment, with exhibits, that is presently before the undersigned.  (ECF No. 57).  Having read reviewed the parties' briefing, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

## II.   BACKGROUND

The basis of Plaintiff's complaint is the alleged violation of his constitutional right to vote.  (*See* ECF No. 16, PageID.77).[1]  The parties do not

---

[1] Because Plaintiff did not sign his amended complaint under penalty of perjury pursuant to 28 U.S.C. § 1746, the pleading is unverified and cannot be used to establish or dispute facts in resolving Defendant's motion for summary judgment.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) and *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992)).  But Plaintiff did sign his response brief to Defendant's summary judgment motion under penalty of perjury.  (*See* ECF No. 61, PageID.473 (swearing that his briefing is "true and correct to the best of my knowledge, information, and belief, under penalty of perjury")).  This is sufficient to fall with the language of § 1746, and the undersigned will treat his briefing as an affidavit for the purposes of establishing or disputing factual matters.  *See Lavado*, 992 F.2d at 605; *Browman*, 981 F.2d at 905.  *See also Veeder v. Tri-Cap*, No. 17-cv-11690, 2018 WL 7254610, at *8-9 (E.D. Mich. Dec. 13, 2018) (permitting plaintiff to bring his statements in his response brief within the bound of 28 U.S.C. § 1746 on motion for summary judgment), *report and recommendation adopted*, 2019 WL 208281 (E.D. Mich. Jan. 15, 2019); *Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011) ("Nevertheless, a declaration under § 1746 is equivalent to an affidavit for purposes of summary judgment.").

genuinely dispute the facts in this case.[2]  Rather, the disposition of Defendant's summary judgment motion rests on a single question of law: Was Plaintiff a pretrial detainee or an incarcerated felon when he sought to vote in the November 2022 election while housed at the Washtenaw County Jail?

To begin, turn back the calendar.  On August 29, 2019, the Saginaw County Circuit Court sentenced Plaintiff for a DUI charge to which he pleaded *nolo contendere*.  (*See* ECF No. 57-1, PageID.383; ECF No. 57-2, PageID.387 (including active Sentence 6 from the August 2019 sentencing)).  This latest conviction triggered Michigan's habitual offender act.  (*See* ECF No. 57-1, PageID.383 (citing Mich. Comp. Laws 769.12)).  Accordingly, Judge David D. Hoffman sentenced Plaintiff to a minimum term of eighteen months and a maximum term of fifteen years.  (*See id.*).

In September 2020, the Michigan Parole Board ordered Plaintiff's parole. (*See* ECF No. 57-3).  Plaintiff seemingly adhered to the conditions of his parole for some time.  But on July 29, 2021, Officer Paul Raymond of the Michigan Department of Corrections ("MDOC") Absconder Recovery Unit ("ARU") arrested Plaintiff on a parole warrant.  (*See* ECF No. 57-4, PageID.400 (the ARU Arrest Report); ECF No. 57-5, PageID.402 (indicating that a parole warrant was

---

[2] Save for Plaintiff's request to strike certain medical information from an exhibit attached to Defendant's motion, Plaintiff does not object to any of Defendant's proffered exhibits.  (*See* ECF No. 61, PageID.467).

3

the basis for the arrest on the Washtenaw County Jail Receiving Form)).  Though a copy of the parole warrant is not included in the record, the MDOC charged Plaintiff with three violations of his parole conditions—charges for which Plaintiff waived his right to a preliminary hearing.  (*See* ECF No. 57-8, PageID.409-10). On the same day, Officer Raymond also authorized a parole detainer.  (*See* ECF No. 57-6, PageID.404; ECF No. 57-7, PageID.406-07 (confirming an active "parole hold")).

Plaintiff remained at Washtenaw County Jail until his transfer into MDOC's custody in May 2023.  (*See* ECF No. 57-9, PageID.411-12).  Plaintiff was therefore confined at the Washtenaw County Jail at the time of the November 8, 2022 election.  Though Plaintiff's Amended Complaint is unverified, *see supra* note 1, it provides the alleged basis for this suit.  That is, Plaintiff requested an absentee ballot from Defendant Nachtreib; once completed, Nachtreib did not collect and mail-in Plaintiff's ballot.  (*See* ECF No. 16, PageID.80).  Consequently, Plaintiff's ballot was not counted.  As Plaintiff puts it in his verified response brief, Nachtreib's credentials suggested he "was trained and qualified to be the *only* person at the jail to handle completed ballots."  (ECF No. 61, PageID.465-66) (emphasis added).  Because of Nachtreib's purported failure to collect Plaintiff's ballot, Plaintiff reasons that Nachtreib violated his constitutional right to vote.

## III.   ANALYSIS AND RECOMMENDATION

4

A.     <u>Governing Standards</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro.*

*Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's

motion").

B.   <u>Discussion</u>

Defendant makes three arguments in support of his motion for summary judgment.  First, Defendant contends that Plaintiff cannot prevail in this § 1983 suit because he did not violate Plaintiff's constitutional rights.  (ECF No. 57, PageID.374-76).  Second, and in the alternative, Defendant asserts he is entitled to qualified immunity.  (*Id.* at PageID.376-77).  And lastly, Defendant argues that Plaintiff's apparent *Monell* claim against Washtenaw County is meritless.  (*Id.* at PageID.378-79).  The undersigned addresses each argument—and Plaintiff's respective responses—in kind.

1.   <u>Constitutional Violation</u>

The parties do not dispute that Plaintiff was housed at the Washtenaw County Jail during the November 2022 election.  The only dispute on this front is Plaintiff's legal status at that time; that is, was Plaintiff a pretrial detainee or an incarcerated felon.  The answer to this question determines whether Defendant is liable for violating Plaintiff's constitutional right to vote.

"To succeed on a § 1983 claim, a plaintiff must first identify a constitutional right, then show that a person acting under the color of state law deprived him of

that right."[3] *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 870 (6th Cir. 2024) (citing *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020)); *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000). In *Reynolds v. Sims*, the Supreme Court—referencing the Equal Protection Clause of the Fourteenth Amendment—wrote that "the right of suffrage is a fundamental matter in a free and democratic society." 377 U.S. 533, 561-62 (1964). *See also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (describing the right to vote "as a fundamental political right, because [its] preservative of all rights"). And as Plaintiff points out in his Amended Complaint, "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." (ECF No. 16, PageID.88 (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000))).

But this right is not absolute. "The state may, within the bounds of the Constitution, strip convicted felons of their voting rights." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974)). Consequently, those felons who have "lost their voting rights[] . . . lack any fundamental right to assert." *Id.* (citing *Wesley v. Collins*, 791 F.2d 1255, 1261 (6th Cir. 1986)).

---

[3] Defendant makes no argument related to the "under color of state law" requirement. The undersigned therefore assumes that this element of the § 1983 is satisfied.

Because it is the States which have the power to disenfranchise voters, state law controls. *See Richardson*, 418 U.S. at 53-56 (affirming that the States have the constitutional authority to enact felon disenfranchisement statutes). The Michigan Constitution empowers the Michigan Legislature to define who qualifies as an elector in Michigan. Mich. Const. art. 2, § 1; *Promote the Vote 2022 v. Bd. Of State Canvassers*, 979 N.W.2d 188, 192 (Mich. 2022) (mem.) (Welch, J., concurring) ("Article 2, § 1 expressly acknowledges that who is qualified to be an elector in Michigan can be limited by other provisions of the [Michigan] Constitution."). Article 2, Section 2 of the Michigan Constitution expressly grants the Michigan Legislature the ability to "exclude persons from voting because . . . [of] commitment to a jail or penal institution." Mich. Const. art. 2, § 2. The combination of these two constitutional provisions are the constitutional bases for Michigan's felon disenfranchisement provisions. *See Promote the Vote 2022*, 979 N.W.2d at 192 n.7 (Welch, J., concurring) (referencing Mich. Comp. Laws § 168.492a); *id.* at 890, n.12 (Zahra, J., dissenting) (finding that the same state constitutional provisions undergird Mich. Comp. Laws § 168.758b).[4]

So empowered, the Michigan Legislature enacted felon disenfranchisement statutes that cover those individuals who have not yet registered to vote as well as

---

[4] *See* Mich. Comp. Laws Ann. § 168.492a (West, Westlaw current through P.A. 2024, No. 275, of 2024 Reg. Sess., 102d Leg.); Mich. Comp. Laws Ann. § 168.758b (West, Westlaw current through P.A. 2024, No. 275, of 2024 Reg. Sess., 102d Leg.).

those felons who were already registered to vote before serving their sentences.  As to unregistered individuals, the relevant portion of Mich. Comp. Laws Ann. § 168.492a states that "[a]n individual who is confined in a jail after being convicted and sentenced is not eligible to register to vote."  With respect to already registered individuals, Mich Comp. Laws Ann. § 168.758b reads in its entirety that:

> A person who, in a court of this or another state or in a federal court, has been legally convicted and sentenced for a crime which the penalty imposed is confinement in jail or prison shall not vote, offer to vote, attempt to vote, or be permitted to vote at an election *while confined*.

(Emphasis added).

Under § 168.758b, "a convicted felon who is not confined for a felony conviction at the time of an election, e.g., a person who has completed a felony prison sentence or even a person on probation *or parole* for a felony, is eligible to vote in Michigan."  *People v. Roebuck*, No. 279555, 2008 WL 1914893, at *1 n.1 (Mich. Ct. App. May 1, 2008) (emphasis added), *appeal denied*, 755 N.W.2d 646 (Mich. 2008) (mem).  *See also United States v. Williams*, 718 F. Supp. 3d 651, 665 n.19 (E.D. Mich. 2024) (citing *Roebuck*, 2008 WL 1914893, a *1 n.1).  Accordingly, had Plaintiff not been confined to the Washtenaw County Jail during the November 2022 election, Plaintiff's position would have a sound basis in state law.  Of course, however, that was not the case.

Indeed, Plaintiff's confinement is why *Roebuck* does not implicate a decision in his favor.  Here is where Defendant's reliance on the Michigan Supreme Court's decisions in *People v. Idziak*, 773 N.W.2d 616 (Mich. 2009) and *People v. Allen*, 968 N.W.2d 532 (Mich. 2021) is pertinent.  (*See* ECF No. 57, PageID.375).

Start with *Idziak*.  There defendant, a felon, was out on parole when he committed additional crimes.  *Idziak*, 773 N.W.2d at 619.  Ninety-eight days passed between the date of defendant's arrest for the new offenses and his sentencing.  *Id.*  On appeal, defendant argued that the sentencing court failed to grant him jail credit towards his new minimum sentence for the ninety-eight days he spent confined before sentencing.  *Id.* (citing Mich. Comp. Laws § 769.11b).[5]

In denying defendant's argument, the Michigan Supreme Court looked to the meaning of Michigan's statute defining the scope of a paroled prisoner's custody.

---

[5] Michigan's jail credit statute reads:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

Mich. Comp. Laws Ann. § 769.11b (West, Westlaw current through P.A. 2024, No. 275, of 2024 Reg. Sess., 102d Leg.).  The question of appropriate jail credit "arises when a person is convicted of a crime and sentenced to imprisonment, granted parole, and then convicted and sentenced to prison for a new felony committed while on parole."  *People v. Idziak*, 773 N.W.2d 616, 619 (Mich. 2009).

*See id.* at 624-27 (citing Mich. Comp. Laws § 791.238).[6] As a general matter, the Court recognized that parolees "remain in the legal custody and under the control of the department [of corrections]." *Id.* at 625 (alteration omitted) (referencing § 791.238(1)). Moreover, under § 791.238(6), "[a] parole shall be construed as a permit to leave the prison, and not as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court . . . ." *See id.* at 625 n.10 (quoting Mich. Comp. Laws § 791.238(6)).

But most important to the *Idziak* Court's analysis—and most important here—was the Court's analysis of § 791.238(2). *See id.* at 625-27. This provision states that

> A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment.[7] The time from the date of the declared violation to the date of the prisoner's availability for return to an institution shall not be counted as time served.

Mich. Comp. Laws Ann. § 791.238(2). The phrase "date of . . . availability" means "'actual or constructive availability for return to the Michigan penal system.'"

---

[6] *See* Mich. Comp. Laws. Ann. § 791.238 (West, Westlaw current through P.A. 2024, No. 275, pf 2024 Reg. Sess., 102d Leg.).

[7] "The deputy director of the bureau of field services, upon a showing of probable violation of parole, may issue a warrant for the return of any paroled prisoner. Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated." Mich. Comp. Laws § 791.238(1).

*Idziak*, 773 N.W.2d at 626 (quoting *Browning v. Michigan Dep't of Corr.*, 188 N.W.2d 552, 556 (Mich. 1971)).  In plain terms, this phrase "is effectively the date of [the parolee's] arrest." *Id.* (citing *Browning*, 188 N.W.2d at 556); *see also People v. Allen*, 968 N.W.2d 532, 541 n.25 (Mich. 2021) (explaining the meaning of the same phrase).  Thus, under § 791.238(2), a "parolee resumes serving his earlier term of imprisonment when arrested and detained in jail even though he has not yet been returned to the physical custody of the DOC." *Idziak*, 773 N.W.2d at 626.

Applying this reading of § 791.238(2), the Michigan Supreme Court held that defendant resumed serving his sentences for the crimes of which he was originally convicted on the date of his arrest for the new offenses.[8]  *See id.* at 626-27.  As defendant resumed his prior sentences upon his arrest on the parole warrant, he was not in jail because of his "eligibility for or ability to furnish bond"—e.g., a requisite component of the jail credit statute.  *Id.*  Accordingly, defendant was not entitled to the sought-after jail credit.  *Id.* at 627.

---

[8] Defendant's criminal history included 13 felony convictions.  *People v. Idziak*, 773 N.W.2d 616, 619 n.1 (Mich. 2009).  Separately, just as the Michigan Supreme Court would do in *People v. Allen*, the undersigned acknowledges that none of the opinions in *Idziak* confirm whether Idziak had been arrested on a parole warrant.  *See People v. Allen*, 968 N.W.2d 532, 541 n.22 (Mich. 2021).  Even so, because the *Allen* Court itself did not believe it needed to decide whether the *Idziak* Court erred in this regard, neither does the undersigned.  *See id.*

In *People v. Allen*, 968 N.W.2d 532 (Mich. 2021), the Michigan Supreme Court unanimously affirmed the *Idziak* Court's reasoning. *Allen* assessed how Michigan's jail credit statute applied to a different statutory provision, Mich. Comp. Laws Ann. § 791.239.[9]  This statute enables certain authorized officials the ability to "'arrest without a warrant and detain in any jail of this state a paroled prisoner, if the [official] has reasonable grounds to believe that the prisoner violated parole or a warrant has been issued for his or her return under [MCL 791.238].'"  *Allen*, 968 N.W.2d at 538 (quoting Mich. Comp. Laws § 791.239) (first alteration added) (emphasis omitted).  In other words, § 791.239 authorizes the arrest or detention of a parolee pursuant to a parole warrant as well as the "detention of a parolee who has already been arrested on new charges . . . ."  *Id.*

Ultimately, the Michigan Supreme Court held that defendant was entitled to jail credit for the time served in jail prior to the issuance of the parole hold.  *Id.* at 544.  Most relevant here, however, is the *Allen* Court's brief discussion of the *Idziak* decision.[10]  First, *Allen* confirmed that *Idziak* supported its reasoning regarding the applicability of the jail credit statute.  *Id.* at 540 ("*Idziak*'s logic supports our conclusion here.").  Second, and most important, *Allen* reiterated that

---

[9] *See* Mich. Comp. Laws Ann. § 791.239 (West, Westlaw current through P.A. 2024, No. 275, of 2024 Reg. Sess., 102d Leg.).

[10] Unlike *Idziak*, *Allen* did not indicate whether a parole hold results in the parolee resuming his prior sentence.  *Allen*'s relevance is therefore limited to its affirmation of *Idziak*.

when a parolee is arrested on a parole warrant, the parolee "resumed serving his or her prior sentence . . . ." *Id.* at 541.

The holding in *Idizak* and its reaffirmation in *Allen* prove fatal for Plaintiff's position. Officer Raymond arrested Plaintiff on a parole warrant, (*See* ECF No. 57-5, PageID.402); Plaintiff does not dispute this fact. Thus, Mich. Comp. Laws Ann. § 791.238(2) applies. Under *Idizak* and *Allen*, this means that Plaintiff resumed his prior sentence upon his arrest on the parole warrant. *See People v. Idziak*, 773 N.W.2d 616, 624-27 (Mich. 2009); *Allen*, 968 N.W.2d at 540-42. Accordingly, Plaintiff resumed serving a "sentence[ ] for a crime for which the penalty imposed [was] confinement in a jail or prison . . . ." Mich. Comp. Laws Ann. § 168.758b. So Plaintiff was not a pretrial detainee during the November 2022 election and not exempt from Michigan's felon disenfranchisement statutes. Plaintiff therefore could "not vote, offer to vote, attempt to vote, or be permitted to vote at an election" during that confinement. Mich. Comp. Laws Ann. § 168.758b.

Such a determination reflects Michigan's scheme for disenfranchising *confined* felons.[11] As mentioned above, Mich. Comp. Laws Ann. § 168.492a

---

[11] To be clear, this in no way means that an escaped—e.g., unconfined—felon could vote. As the Michigan Court of Appeals stated in *Roebuck*, only those felons who are properly authorized to be outside a penal institution's walls may vote under Michigan law. *See People v. Roebuck*, No. 279555, 2008 WL 1914893, at *1 n.1 (Mich. Ct. App. May 1, 2008) (citing Mich. Comp. Laws § 168.758b and stating that those authorized to vote under that provision include felons who had completed their sentence or who were on probation or parole). Contrary to Plaintiff's assertion that there is not an "at large" requirement to voting, (*see* ECF No. 61, PageID.465), *Roebuck* suggests that a felon on parole can only vote when lawfully unconfined—

15

permits individuals who are otherwise qualified to vote the ability to register to vote before trial or sentencing. Such permission is revoked once the individual is "confined in a jail after being convicted and sentenced." Mich. Comp. Laws Ann. § 168.492a. Likewise, Michigan disenfranchises convicted felons who are already registered to vote once convicted and sentenced to "confinement in jail or prison." Mich. Comp. Laws § 168.758b. *See also People v. Roebuck*, No. 279555, 2008 WL 1914893, at *1 n.1 (Mich. Ct. App. May 1, 2008) ("[A] convicted felon *who is not confined for a felony conviction at the time of an election*, e.g., a person who has completed a felony prison sentence or even a person on probation or parole for a felony, is eligible to vote in Michigan.") (emphasis added) (citing Mich. Comp. Laws § 168.758b), *appeal denied*, 755 N.W.2d 646 (Mich. 2009) (mem.).

As Plaintiff resumed his prior sentence once arrested and confined at the Washtenaw County Jail, Plaintiff was legally stripped of his right to vote. *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974)). Plaintiff therefore lacks the fundamental right needed to satisfy his § 1983 claim. *See id.* (citing *Wesley v. Collins*, 791 F.2d 1255, 1261 (6th Cir. 1986)). Thus, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**.

---

that is, at large. *See* Mich. Comp. Laws Ann. § 791.238(6) (describing parolees as "at large" while lawfully outside of prison).

In reaching this recommendation, the undersigned is mindful that, to his knowledge, this is the first application of § 791.238(2) to § 168.758b.[12]  Notably, neither party argued whether abstention applies under the circumstances presented in this case.  Nor could they have done so meritoriously.  The Supreme Court has held that "abstention from the exercise of federal jurisdiction is the exception, not the rule" and only applies in "exceptional circumstances."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (internal quotation and citation omitted).  Having reviewed the various abstention doctrines,[13] the undersigned finds that none fit here.

### 2.   Qualified Immunity

Qualified immunity inquiries involve a two-step, nonsequential process which asks whether the defendant official violated the plaintiff's constitutional rights and whether the constitutional right violated was "clearly established" at the time of the alleged unconstitutional conduct.  *See Pearson v. Callahan*, 555 U.S. 223, 227, 232 (2009) (allowing federal courts to address the two steps in whichever order makes most sense).  Because the undesigned finds that Plaintiff could not assert his right to vote, Defendant did not violate that right.  Even so, had Plaintiff

---

[12] A Westlaw search for cases containing citations to both statutory provisions yielded zero results.

[13] *See Bellotti v. Baird*, 409 U.S. 132, 143 n.10 (1976) ("[I]t would appear that abstention may be raised by the court [s]ua sponte.").

adequately shown a constitutional violation at the summary judgment stage,
Defendant would be entitled to qualified immunity on the "clearly established"
prong of the analysis.

It is Plaintiff's burden to show why qualified immunity does *not* shield
Defendant in this case. *Blez v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). "'A
Government official's conduct violates clearly established law when, at the time of
the challenged conduct, the contours of a right are sufficiently clear that every
reasonable official would have understood that what he is doing violates that
right.'" *Williams v. Maurer*, 9 F.4th 416, 437 (6th Cir. 2021) (quoting *Ashcroft v.
al-Kidd*, 563 U.S. 731, 741 (2011)). In determining whether defendants violated
clearly established law, the focus shifts "'first to decisions of the Supreme Court,
then to decisions of th[e] [Sixth Circuit] and other courts within our circuit, and
finally to decisions of other circuits.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887,
898 (6th Cir. 2019) (alteration omitted) (quoting *Crawford v. Geiger*, 656 F. App'x
190, 198 (6th Cir. 2016)). "'[I]t is only in extraordinary cases that [the
undersigned] can look beyond Supreme Court and Sixth Circuit precedent to find
clearly established law.'" *Kosch v. Traverse City Area Pub. Sch.*, No. 23-1354,
2024 WL 3549589, at *5 (6th Cir. July 26, 2024) (quoting *Walton v. City of
Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993), *superseded by statute on other*

grounds as recognized in, *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407-08 (6th Cir. 2007)).

Plaintiff does not satisfy his burden at this point in the qualified immunity analysis. He does not cite any caselaw to explain why Defendant Nachtreib is not entitled to qualified immunity. "This failing is terminal." *Id.* at *6 (citing *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 993 (6th Cir. 2017) (observing that plaintiff fails on the "clearly established" prong without citations to Supreme Court or Sixth Circuit cases with comparable facts). And as mentioned, nor could he have produced such caselaw. Without any case from any court applying Mich. Comp. Laws Ann. §§ 168.758b and 791.238(2) together—let alone from the Supreme Court or the Sixth Circuit on comparable facts—there was no basis for a reasonable official in Defendant Nachtreib's position to know that his conduct violated Plaintiff's constitutional right to vote. As Plaintiff fails to satisfy his burden, Defendant would be entitled to qualified immunity had Plaintiff sufficiently established a violation of his right to vote.

### 3.    *Monell* Claim Against Washtenaw County

In Plaintiff's Amended Complaint, he indicated that he sued Defendant Nachtreib in his individual and official capacities. (*See* ECF No. 16, PageID.76). When a defendant official is sued in his official capacity, this is construed as "'only another way of pleading an action against an entity of which an officer is an

agent.'"  *Hopper v. Phil Plummer*, 887 F.3d 744, 760 n.4 (6th Cir. 2018) (quoting

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  When a plaintiff lodges such

an official capacity claim, he seeks relief against the municipality itself based on

the alleged unconstitutional conduct of the municipality's employee, acting

pursuant to official policy or custom.  *See VanPelt v. City of Detroit, Mich.*, 70

F.4th 338, 341 (6th Cir. 2023) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

694-95 (1978)).

Though Plaintiff did not intend to sue Washtenaw County—"the entity of

which" Defendant Nachtreib "is an agent"—he did so in his complaint.[14]  (ECF

No. 61, PageID.466 ("If Plaintiff intended to sue Washtenaw County itself, he

would have listed them specifically.  He did not.")).  To prevail, Plaintiff would

need to show the existence of "an unconstitutional policy or custom in order to

prevail on a § 1983 claim" against Washtenaw County.  *Cady v. Arenac Cnty.*, 574

F.3d 334, 345 (6th Cir. 2009) (citing *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S.

397, 403-04 (1997)).  *See also VanPelt*, 70 F.4th at 341 ("But without a

constitutional violation, '[t]here can be no liability under *Monell*.'") (quoting

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)).  But seeing as Defendant

Nachtreib did not violate Plaintiff's right to vote and Plaintiff does not point to any

---

[14] Suing Defendant in his official capacity is functionally equivalent to specifically listing Washtenaw County as a separate defendant in this suit.

unlawful policy or custom, any such *Monell* claim against Washtenaw County is deficient.

## IV.    CONCLUSION

Michigan law disenfranchises felons who are confined in jail or prison while they serve their sentences.  Upon his arrest on a parole warrant—that is, while confined at the Washtenaw County Jail—Plaintiff resumed his previous sentence. As a result, Plaintiff could not vote in the November 2022 election.  Plaintiff thus lacked a constitutional right to assert, a constitutional right needed to prevail on his § 1983 claim.  Even if Plaintiff had adequately established a violation of his constitutional right to vote, Defendant would be entitled to qualified immunity. And finally, Plaintiff's (unintended) *Monell* claim against Washtenaw County fails because Plaintiff does not establish the requisite components of such a claim.  For these reasons, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.  Additionally, should this Report and Recommendation be adopted, the undersigned further **RECOMMENDS** that Defendant's motion to dismiss, (ECF No. 55), be **DENIED AS MOOT**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: February 5, 2025.                s/Curtis Ivy, Jr.
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on February 5, 2025.

s/Sara Krause
Case Manager
(810) 341-7850